**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TYEASHIA M. BLACKBURN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-22-983-G |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**<u>ORDER</u>**

Now before the Court are the Motion for Summary Judgment (Doc. No. 37) filed

by Plaintiff Tyeashia M. Blackburn and the Motion for Summary Judgment (Doc. No. 165)

filed by Defendant United States.  Defendant has filed a Response (Doc. No. 151) to

Plaintiff's Motion, to which Plaintiff has replied (Doc. No. 167).  *See also* Pl.'s Suppls.

(Doc. Nos. 48, 106, 155); Pl.'s Decl. (Doc. No. 68).  Plaintiff has filed a Response (Doc.

No. 166) to Defendant's Motion, to which Defendant has replied (Doc. No. 167).

*I.     Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available

evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The

Court must grant summary judgment when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

"When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  The movant can satisfy its initial burden by producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.*  (internal quotation marks omitted).  If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and designate specific facts" that would be admissible in evidence in the event of trial "so as to make a showing sufficient to establish the existence of an element essential to that party's case in

2

order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); *see* Fed. R. Civ. P. 56(c)(1)(A).

When, however, the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies." *Pelt*, 539 F.3d at 1280. The moving party cannot carry its burden by "pointing to parts of the record that [the movant] believes illustrate the absence of a genuine issue of material fact." *Id.* Rather, to obtain summary judgment on its own claims or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

> Regarding cross-motions for summary judgment, the Tenth Circuit has explained:
>
> "The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967). Accordingly, "cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (alteration and citation omitted).

II.     *Relevant Facts*[1]

Plaintiff, appearing pro se, alleges that she received negligent medical treatment at the Oklahoma City VA Medical Center ("VA Center") in Oklahoma City, Oklahoma. *See*

---

[1] The evidentiary record before the Court consists primarily of copies of medical records, Defendant's written discovery requests and Plaintiff's answers, and materials from Plaintiff's application for veterans benefits. In its Reply, Defendant nominally objects that "the documents contain hearsay," but Defendant does not challenge any specific item of

Second Am. Compl. (Doc. No. 31). Plaintiff visited the emergency department at the VA Center on November 15, 2020, complaining of swelling of her tongue. *Id.* at 1; Answer ¶ 4 (Doc. No. 32); Def.'s Resp. Ex. 1 (Doc. No. 151-1) at 1. Plaintiff was assessed to have chronic idiopathic angioneurotic edema (also referred to as "angioedema"), and treating physician Arman Janloo, MD, prescribed several medications to be given. Second Am. Compl. at 1; Answer ¶ 4; Def.'s Ex. 1, at 8. Included among those medications was 0.3 milligrams of epinephrine, which Dr. Janloo ordered to be administered to Plaintiff "IM," or intramuscularly. Def.'s Resp. Ex. 1, at 8.

Rather than carrying out Dr. Janloo's order as directed, VA Center nurse David Jones administered the epinephrine to Plaintiff intravenously ("IV"). *Id.* Dr. Janloo later noted Nurse Jones' error in Plaintiff's record, stating:

> At time of discharge, nurse taking care of patient informed me that epinephrine given IV instead of IM form that was ordered. The patient states she initially "felt funny" with IV administration but no chest pain or [shortness of breath] and felt better and no longer had symptoms from IV administration at time of discharge. EKG done after notified even though patient did not complain of chest pain or [shortness of breath] which showed [normal sinus rhythm] and old findings of nonspecific T wave changes. Angioedema completely resolved. I offered for the patient to stay longer for us to observe her in case she was not feeling well due [to] med administration, but she stated that she felt better and her ride was waiting for her and she wanted to go home. Vitals stable at time of discharge and patient was able to ambulate out of the ER reporting being symptom free.

---

evidence or argue that any material relied upon by Plaintiff "cannot be presented in a form that would be admissible in evidence." Def.'s Reply at 3; Fed. R. Civ. P. 56(c)(3). In summarizing the record, the Court has disregarded Plaintiff's accompanying captions and characterizations, instead looking only to the text of the relevant documents.

*Id. But see* Pl.'s Reply Ex. 4 (Doc. No. 153-4) at 2 (cardiology record stating that Plaintiff "was tachycardic, hypertensive and had 9/10 chest pain" after receiving the IV epinephrine); Def.'s Resp. Ex. 2 (Doc. No. 151-2) at 1 (November 16, 2020 record stating that Plaintiff reported "she had to be wheelchaired out" of the emergency department).

A VA Center record includes Plaintiff's statement that, after being sent home from the emergency department, "she continued to have dull, boring, constant chest pain." Pl.'s Reply Ex. 4, at 3.

On November 16, 2020, Plaintiff recounted the epinephrine incident in a telephone visit with a primary-care nurse at the VA Center. *See* Pl.'s Resp. Ex. 6 (Doc. No. 166-6) at 2-3. The nurse summarized Plaintiff's account as follows:

> [Plaintiff] states last night she had another angioedema episode and went to our ER and states that despite the fact that Dr. Janloo wrote for her to have the epi IM, the nurse gave it to her IV. She states her heart started racing, she couldn't focus and she passed out. She states she came to with Dr. Janloo asking the nurse why he did that. She reports she is still sore all over her chest, still lightheaded, her head is pounding. She states her breathing is okay, states "I'm not gasping but it feels funny like not breathing right[.]" She also states she feels like she is still blanking out and losing time.

> Advised her that she should probably go back to the ER but she is worried because she states it used to be her safe place and now she is concerned it will happen again but also worried about going to another ER due to them not knowing her [history]. Advised her she may not have a choice if she keeps feeling this way or if it gets worse. She verbalized understanding but wants to get [primary care physician's] opinion first.

*Id.* at 3.

Later that same day, Plaintiff returned to the VA Center emergency department, complaining of chest pain, shortness of breath, dizziness, weakness, and nausea. Pl.'s Resp. Ex. 7 (Doc. No. 166-7) at 8-9; Pl.'s Reply Ex. 5 (Doc. No. 153-5) at 2. Plaintiff had

5

an "elevated" troponin level at that time.  Def.'s Resp. Ex. 2, at 1.  Although one record states that an "EKG did not reveal arrythmia or acute heart event," another record states that Plaintiff's EKG showed "sinus tachycardia."  *Id.*; Pl.'s Reply Ex. 4, at 3; *see also* Pl.'s Reply Ex. 5, at 2 (record noting that EKG showed a "slight t-wave inversion in lead V1, which has been present on prior EKGs").

Plaintiff was admitted to the hospital for consultation with cardiology and further investigation of her chest pain.  Pl.'s Resp. Ex. 7, at 6; Def.'s Resp. Ex. 2, at 1.  The cardiologist's record states: "chest pain likely due to receiving epi IV which le[]d to Type II stress [myocardial infarction] and elevated troponin levels.  Conservative managem[e]nt for now."  Pl.'s Resp. Ex. 8 (Doc. No. 166-8) at 7; *see also id.* at 3, 4.

Plaintiff has submitted correspondence from the Department of Veterans Affairs, which includes the following findings by that entity:

- "Medical records show a diagnosis of myocardial infarction . . . ."  Pl.'s Reply Ex. 6 (Doc. No. 153-6) at 3.

- "Based on review of [Plaintiff's] medical records, the [MI] on November 15, 2020 occurred in the context of acute medical care for a severe allergic reaction . . . , during which epinephrine was administered.  The MI developed immediately following this medical intervention. . . . . There is no cardiology statement attributing the MI primarily to hypertension or angioedema, and the sequence of events strongly suggests the MI occurred in association with the acute medical care provided."  Pl.'s Suppl. Ex. 3 (Doc. No. 155-3) at 3.

- "The [MI] caused significant heart muscle damage, as evidenced by [EKG] findings of 70% functional collapse and elevated troponins."  Pl.'s Resp. Ex. 9 (Doc. No. 166-9) at 5.

While admitted at the VA Center, Plaintiff was given sublingual nitroglycerin for chest pain relief.  *See, e.g.*, Pl.'s Resp. Ex. 7, at 6.  An EKG administered to Plaintiff

6

showed heart performance "within normal limit," with "[n]o acute ischemic changes." Pl.'s Resp. Ex. 8, at 8; Pl.'s Reply Ex. 3 (Doc. No. 153-3) at 2.  Plaintiff was referred for a myocardial perfusion imaging study (or "stress test").  Pl.'s Resp. Ex. 8, at 8.  The stress test was conducted on November 17, 2020, and showed "abnormal" results: polyarteritis nodosa ischemia suggesting multivessel disease; transient ischemic dilation of the left ventricle during stress, suggesting poor prognosis; and a normal left ventricular ejection fraction.  Pl.'s Reply Ex. 3, at 2-3; Def.'s Resp. Ex. 3 (Doc. No. 151-3) at 2.

The cardiologist recommended a coronary angiogram, as well as a left heart catheterization "due to concerning stress test findings and ongoing chest pain."  Pl.'s Reply Ex. 3, at 3.  Though the exact timing and sequence of the procedures is not clear, the available record reflects that Plaintiff had a left heart catheterization performed on November 18, 2020, and then another such procedure performed on November 19, 2020, or November 20, 2020, "for stent placement."  Pl.'s Mot. Ex. 2 (Doc. No. 37-2) at 7; Def.'s Resp. Ex. 3, at 2.  No stent was placed during this second procedure, however.  Pl.'s Mot. Ex. 2, at 7; Def.'s Resp. Ex. 3, at 2.[2]  Plaintiff's troponin level trended downward during her hospital stay, and the record indicates that she was discharged on November 21, 2020. Pl.'s Resp. Ex. 7, at 5; Pl.'s Mot. Ex. 2, at 7.

Plaintiff alleges that the erroneous administration of IV epinephrine on November 15, 2020, caused her "physical injury" and that she "now ha[s] a 60% blockage which will end in having open heart surgery."  Second Am. Compl. at 2.

---

[2] Plaintiff states that there have been three unsuccessful attempts at stent placement. *See* Pl.'s Mot. Ex. 2, at 7.

*III.     Discussion*

Plaintiff asserts a claim for relief against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 et al.  *See* Second Am. Compl. at 1.  Both parties seek summary judgment in their favor on Plaintiff's FTCA claim.  Plaintiff argues that she is entitled to judgment as a matter of law because the undisputed record "clearly establish[es] a breach of the standard of care and resulting harm."  Pl.'s Mot. at 1.  Defendant contends that Plaintiff has failed to meet her burden to prove a medical negligence claim under applicable Oklahoma law.  *See* Def.'s Mot. at 5-9.

Plaintiff's claim is governed by the substantive law of Oklahoma, as "the state in which the allegedly tortious act occurred."  *Duckett v. U.S., Dep't of Veterans Affs.*, No. CIV-09-259-D, 2010 WL 3909340, at *2 (W.D. Okla. Sept. 30, 2010) (citing 28 U.S.C. § 1346(b)(1)).

> Under Oklahoma law, a claim of medical negligence requires proof of three essential elements: "first, that the defendant had a duty to protect the plaintiff from injury; second, that the defendant failed to properly exercise or perform that duty; and third, that the defendant's failure to properly exercise or perform that duty caused the plaintiff's injury."

*Id.* (quoting *Jones v. Mercy Health Ctr., Inc.*, 155 P.3d 9, 13 (Okla. 2006)).

As to the first and second elements, a physician or other medical professional's duty of care is "measured by national standards."  Okla. Stat. tit. 76, § 20.1; *see* Okla. Unif. Civ. Jury Instruction No. 14.1; *Towery-Campbell v. United States*, No. 06-CV-162, 2008 WL 281536, at *8 (E.D. Okla. Jan. 30, 2008).  This standard of care "generally requires 'that the physician exercise the care, skill, and learning ordinarily exercised by other physicians under similar circumstances.'"  *Duckett*, 2010 WL 3909340, at *3 (quoting *Sisson ex rel.*

*Allen v. Elkins*, 801 P.2d 722, 727 (Okla. 1990)).  What the duty of care requires in a particular case and whether a physician's particular actions breached that duty are both questions of fact for the jury.  *See Johnson v. Hillcrest Health Ctr., Inc.*, 70 P.3d 811, 816-17, 818 n.20 (Okla. 2003).

The third element, causation, requires a plaintiff to show that his or her injuries were "proximately caused by the defendant's failure to exercise" the requisite duty of care. *Smith v. Hines*, 261 P.3d 1129, 1133 (Okla. 2011).  The cause of a plaintiff's injury is likewise "a question of fact for the jury to decide."  *Id.*  Causation becomes a question of law "only when there is no evidence from which the jury could reasonably find a causal link between the negligent act and the injury or where the facts are undisputed."  *Johnson*, 70 P.3d at 819 n.25.

Normally, when a patient sues medical personnel "for failure to properly . . . treat the patient, the issue of fact is one of science and must be established and determined upon the testimony of skilled, professional witnesses."  *Benson v. Tkach*, 30 P.3d 402, 404 (Okla. Civ. App. 2001).  "The applicable standard of care and deviations therefrom causing an injury" therefore "are ordinarily established by expert testimony."  *Johnson*, 70 P.3d at 817.  Expert testimony is not required, however, where "the common knowledge of lay persons would enable a jury to conclude the applicable standard of care and whether its breach caused the injury."  *Id.* at 817.  Stated differently, "expert testimony may not be needed where laypeople can ascertain the elements of a claim for negligence or malpractice through their common knowledge and experience."  *Ellis v. Grimes*, No. 17-cv-00325,

9

2023 WL 4564550, at *5 (N.D. Okla. July 17, 2023) (citing *Boxberger v. Martin*, 552 P.2d 370, 374-75 (Okla. 1976))).[3]

Defendant seeks summary judgment because Plaintiff has not designated an expert witness to testify regarding the applicable national standard of care that should have been followed by the medical personnel during Plaintiff's visit to the VA Center or as to whether Nurse Jones' actions caused Plaintiff's claimed cardiac injuries. *See* Def.'s Mot. at 6-8. Defendant argues that Plaintiff therefore "lacks evidence to support her claim." Def.'s Reply at 3. Plaintiff contends that, given the undisputed IV administration of epinephrine to Plaintiff and the evidence in the record supporting her contention that the error caused an MI and cardiac damage, this is the "extraordinary" case in which expert testimony is not required to prove the negligence of Defendant. *Bean v. St. Francis Hosp., Inc.*, 588 P.3d 894, 898 (Okla. 2026); *see* Pl.'s Resp. at 2-3, 9-12; *see also* Pl.'s Mot. at 4-10.[4]

---

[3] In cases "where the act is negligent within the common knowledge of a layman," the doctrine of res ipsa loquitur may be applied to permit the jury "to draw an inference of negligence from the happening of an accident of a kind which experience has shown does not normally occur if due care is exercised." *Boxberger*, 552 P.2d at 374; *see, e.g.*, *Turney v. Anspaugh*, 581 P.2d 1301, 1303-05 (Okla. 1978); *Harder v. F.C. Clinton, Inc.*, 948 P.2d 298, 304-09 (Okla. 1997).

[4] Plaintiff's supporting authority includes two journal articles that generally endorse the use of IM injection of epinephrine as an initial or "first-line" treatment of anaphylaxis (a symptom of which can be angioedema). *See* Pl.'s Mot. at 4, 9 (citing Joshua A. Boyce et al., *Guidelines for the Diagnosis and Management of Food Allergy in the United States: Summary of the NIAID-Sponsored Expert Panel Report*, 126 J. Allergy & Clinical Immunology 1105 (2010); Stephen F. Kemp et al., *Anaphylaxis: A Review of Causes and Mechanisms*, 110 J. Allergy & Clinical Immunology 342 (2002)). Plaintiff's Motion also includes multiple incorrect citations and "fictitious" quotations, which appear to be the result of Plaintiff's briefing being written with the assistance of generative artificial intelligence ("GenAI"). *See, e.g.*, Pl.'s Mot. at 8, 9. Since the Motion was filed, the Court has cautioned Plaintiff that "misuse of GenAI, or fabrication of case citations without the use of GenAI, is sanctionable conduct." *Blackburn v. United States*, No. CIV-22-983-G,

Having reviewed the relevant record and authorities, the Court concludes that the circumstances of this case are materially similar to those in which Oklahoma courts have found that expert testimony was unnecessary because "reasonable persons could conclude that the failure of [the medical personnel] to provide proper medical treatment constituted . . . negligence." *Benson*, 30 P.3d at 406-07. In *Benson*, for example, the plaintiff attested that prior to her mother's surgery, her mother "was not suffering from infections," but after surgery and transfer to a different facility, the plaintiff's mother "was in great pain" and "continued to suffer great pain until her death." *Id.* at 406. The appellate court reversed the grant of summary judgment to defendants, holding that "[t]he decedent's injury was so apparent and objective that expert testimony was not necessary for the issue of negligence to reach the jury." *Id.* at 407. And in *Turney*, the Oklahoma Supreme Court explained "that only 'common knowledge and experience' w[ere] required to assess a surgeon's lack of care in leaving a surgical sponge in plaintiff's abdomen during a hysterectomy procedure." *Ellis*, 2023 WL 4564550, at *5 (quoting *Turney*, 581 P.2d at 1308).

"Negligence on the part of a hospital in the care and treatment of a patient consists of doing something it should not have done, or omitting an action it should have taken." *Johnson*, 70 P.3d at 816. Here, as with leaving a sponge in a patient's abdomen, evidence showing that the VA Center administered epinephrine to Plaintiff intravenously rather than intramuscularly and concluding that Plaintiff shortly thereafter suffered a myocardial infarction is sufficient, even without expert testimony, to allow a reasonable jury to find

---

2026 WL 937941, at *1 (W.D. Okla. Apr. 7, 2026); *see Moore v. City of Del City*, No. 25-6002, 2025 WL 3471341, at *2-3 (10th Cir. Dec. 3, 2025).

11

that the VA Center failed to properly treat Plaintiff and that such failure caused Plaintiff to be injured. *See Ellis*, 2023 WL 4564550, at *7 (denying summary judgment where "reasonable jurors could rely on their common knowledge and experience to find that the . . . paramedics should have done a full assessment of [the plaintiff] and transported him to the hospital"); *see also, e.g.*, Pl.'s Reply Ex. 4, at 3 ("[Plaintiff] denies having chest pain until [November 15, 2020]."); Pl.'s Resp. Ex. 8, at 7 ("[C]hest pain likely due to receiving epi IV which le[]d to Type II stress MI and elevated troponin levels."). When the evidence is construed in Plaintiff's favor as the nonmovant, Plaintiff's injury is "so apparent and objective" that "it could be determined that [Defendant] was negligent." *Benson*, 30 P.3d at 407; *Johnson*, 70 P.3d at 819. Because Plaintiff has presented evidentiary material that would permit a reasonable jury to conclude that Defendant was negligent under Oklahoma law, Defendant's Motion for Summary Judgment shall be denied.

This does not mean, however, that Plaintiff is entitled to summary judgment in her favor. "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad.*, 483 F.3d at 1030 (internal quotation marks omitted); *see also Brown*, 835 F.3d at 1230 n.3. Here, Plaintiff has not shown that she is entitled to judgment in her favor as a matter of law. As explained by the Tenth Circuit, "a more stringent summary judgment standard applies" when a party seeks summary judgment on its own claim. *Pelt*, 539 F.3d at 1280. While Plaintiff has shown genuine issues of fact as to whether the VA Center breached the applicable standard of care and whether that breach caused injury to Plaintiff, Plaintiff's proffered evidence does not "establish, as a matter of law, all essential elements of" her claim. *Id.*; *see* Fed.

12

R. Civ. P. 56. "[S]ummary judgment is inappropriate if disputes remain as to material facts." *Christian Heritage Acad.*, 483 F.3d at 1030. Therefore, the matter shall be set for trial.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 37) and Defendant's Motion for Summary Judgment (Doc. No. 165) are DENIED.

IT IS SO ORDERED this 29th day of June, 2026.

_____
CHARLES B. GOODWIN
United States District Judge